Jesse M. STANTON, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 91–1868.

United States Court of Veterans Appeals.

Nov. 5, 1993.

Jesse M. Stanton, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Amanda Linn Cashion, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and IVERS, Judges.

IVERS, Judge:

Jesse M. Stanton appeals an August 7, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for a chronic low back disorder and left shoulder impingement syndrome and denying an increased evaluation for right shoulder injury with rotator cuff tendinitis and impingement syndrome (major) (rated 30% disabling). *Jesse M. Stanton,* BVA 91–29548 (Aug. 7, 1991). The Secretary has filed a brief, seeking affirmance of the BVA decision regarding the low back disorder and right shoulder claims and remand of the BVA decision regarding the left shoulder impingement syndrome claim. The Court has jurisdiction of the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, the Court affirms in part and vacates in part the August 1991 decision of the BVA and remands the matter for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

Appellant served on active duty in the United States Navy from June 24, 1948, to March 17, 1952 (R. at 1–2); the United States Air Force from March 18, 1952, to March 17, 1956 (R. at 3); and the Air National Guard at various times from June 1, 1972, to October 11, 1979 (R. at 5, 151–52). On May 6, 1977, while on active duty for training, he slipped and fell, tearing a rotator cuff in his right shoulder. R. at 35–44. (A rotator cuff is "a supporting and strengthening structure of the shoulder joint" consisting of various tendons and muscles. WEBSTER'S MEDICAL DESK DICTIONARY 626 (1986).) On December 4, 1978, again while on active duty for training, appellant reported having aggra-

vated a preexisting sciatic muscle injury while lifting a power cable. R. at 153, 214–16. On July 30, 1979, he applied to a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) for service connection for a right shoulder rotator cuff tear, a back injury, high blood pressure, a prostate condition, and a permanent and total disability rating for pension purposes. R. at 7. On February 8, 1980, the RO granted service connection for the right shoulder condition (rated as 20% disabling), but denied service connection for the other conditions, including a low back injury. R. at 167. On February 23, 1981, the Board denied an increased evaluation for the service-connected right shoulder condition and denied service connection for the other conditions, including low back strain. R. at 187–88. On October 28, 1981, appellant sought an increased evaluation for the right shoulder condition and requested clarification of the denial of service connection for a low back injury. R. at 191. On November 16, 1981, the RO denied an increased evaluation for the right shoulder condition and referred appellant to the February 1981 BVA decision regarding the denial of service connection for a low back injury. R. at 194.

On December 29, 1988, appellant sought an increased evaluation for the right shoulder condition, resubmitted his claim for service connection for a low back condition, and sought service connection for a left shoulder condition. R. at 196. On June 20, 1989, the RO increased the evaluation of the right shoulder condition to 30% disabling but denied secondary service connection for left impingement syndrome; the RO also denied service connection for, inter alia, a low back injury with residuals of a low back strain. R. at 198–99; see also R. at 200. On January 4, 1991, the Board remanded the case to the RO for consideration of appellant's December 1978 period of active duty for training because neither the RO nor the BVA in 1981 had considered this period of service and because the RO in 1989 had denied reopening the claim due to a lack of new and material evidence. R. at 255. The Board also remanded the right shoulder condition claim for reconsidera-

tion because the RO had assigned a 30% disability rating and labelled that evaluation the "maximum evaluation assignable for this condition," whereas a 40% disability rating is the maximum evaluation assignable under the relevant diagnostic code (DC). *Ibid.* A January 1991 Supplemental Statement of the Case (SSOC) sent to appellant indicates that the RO denied an increased evaluation for the right shoulder condition and denied service connection for the low back condition. R. at 262–63. On August 7, 1991, the Board denied service connection for residuals of a low back injury and for left shoulder impingement syndrome and denied an increased evaluation for the service-connected right shoulder condition. *Stanton,* BVA 91–29548, at 8.

## II. ANALYSIS

### A. *Right Shoulder Condition Claim*

■ Appellant's claim for an increased evaluation for his service-connected right shoulder condition is a new claim, and the Court reviews the Board's findings of fact regarding new claims under a "clearly erroneous" standard of review. 38 U.S.C.A. § 7261(a)(4) (West 1991); *Proscelle v. Derwinski,* 2 Vet.App. 629, 631 (1992); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990); *see also Lovelace v. Derwinski,* 1 Vet.App. 73, 74 (1990) (determination of degree of impairment is question of fact). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert, supra.*

■ Appellant's service-connected right shoulder condition is currently rated as 30% disabling. R. at 199. Under 38 C.F.R. § 4.71a, DC 5201 (1992), a 30% rating is warranted for a major condition when motion of the arm is limited to "[m]idway between side and shoulder level." When such motion is limited to 25 degrees from the side, a 40% rating is warranted. *Ibid.* In its August 1991 decision, the BVA pointed to a May 17, 1989, VA examination in

support of its determination that the right shoulder condition warranted a 30% rating. *Stanton,* BVA 91–29548, at 6–7. In the report from that examination, a VA physician wrote:

> [The veteran's] right shoulder shows gross atrophy of the deltoid, supraspinatus and infraspinatus muscles. He is tender over the right acromial edge. He has forward flexion to 40 degrees, extension to 20 degrees, external rotation to 30 degrees and internal rotation to 50 degrees. He can abduct to only 60 degrees before pain and he is limited with active and passive abduction to 90 degrees total abduction.

R. at 133. Because the May 1989 examination indicates that appellant could abduct his right arm to 60 degrees, the Board's determination that a 30% rating was warranted has a plausible basis and is not clearly erroneous. The Court will thus affirm the Board's denial of an increased evaluation for the service-connected right shoulder condition.

█ Before the Board and in his brief before the Court, appellant argued that his right shoulder condition should be rated under 38 C.F.R. § 3.321(b)(1) (1992). R. at 265; Appellant's Br. at 6. Under 38 C.F.R. § 3.321(b)(1), the VA's Chief Benefits Director or the Director of the Compensation and Pension Service is authorized to approve

> an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

Here, appellant testified at a March 1990 personal hearing that his primary occupation was that of driver. R. at 229. He also testified that he was able to tie down loads of trees that he hauled on a flatbed truck even though he performed that task more

slowly because of his right shoulder condition. R. at 230–31. The Court thus holds that this case does not present an *exceptional* circumstance within the meaning of the regulation. *See Moyer v. Derwinski,* 2 Vet.App. 289, 293 (1992) (review under 38 C.F.R. § 3.321(b)(1) was warranted where exceptional circumstances involved the potential applicability of numerous different diagnostic codes to one claimed condition); *Fisher v. Principi,* 4 Vet.App. 57, 60 (1993) (rating schedule applies unless exceptional or unusual circumstances "render application of the schedule impractical"; "in the absence of exceptional or unusual circumstances, the failure to deal with [38 C.F.R.] § 4.16(b) [dealing with individual unemployability] would at the most be harmless error").

In his brief, appellant states: "... I am still having problems with this RIGHT Shoulder/Arm and it[']s not going to ever be BETTER! I'm still under continual care with the Orthopedic doctors at the Portland V.A. Hospital." Appellant's Br. at 5. However, the Court is precluded from considering any material that was not before the Secretary or the Board at the time of its decision since the Court reviews "the record of proceedings before the Secretary and the Board." 38 U.S.C.A. § 7252(b) (West 1991); *Rogozinski v. Derwinski,* 1 Vet.App. 19, 20 (1990). Of course, appellant is free to seek an increased evaluation based on a worsening of his condition subsequent to the BVA's August 1991 decision. *See Proscelle, supra.*

### B. *Low Back Disorder Claim*

#### 1. *Reopening of the Claim*

█ Appellant's claim for service connection for a low back disorder was previously denied by a final BVA decision in 1981. R. at 187–88. Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C.A. § 7104(b) (West 1991). On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *See Ma-*

*nio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *See Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). "New evidence" is evidence that is not "merely cumulative" of other evidence on the record. *Ibid.* Evidence is "material" where it is "relevant to and probative of the issue at hand" and where it is of "sufficient weight or significance that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Sklar v. Brown,* 5 Vet.App. 140, 145 (1993); *Cox v. Brown,* 5 Vet.App. 95, 98 (1993); *Colvin, supra.* Second, if the BVA determines that the evidence is new and material, it must reopen the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992). Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors,* 2 Vet.App. at 185.

In this case, in connection with the resubmitted claim, appellant submitted a March 1981 letter from a paramedic. R. at 189. In the letter, the paramedic wrote: "During the past month to six weeks I have had occasion to administer emergency care to Mr. Jesse Stanton for periods of extreme back pain with radicular symptoms." *Ibid.* The paramedic's letter describing radicular symptoms is similar to an October 1979 VA examination report that diagnosed "[i]njury low back, history of, multiple [episodes] with residual low back strain chronic with limited motion and radiculopathy right." R. at 90. While this evidence does not directly address whether the condition was incurred or aggravated during service, it goes to the question of continuity of symptomatology. When "viewed in the context of all the evidence," *Sklar,* 5 Vet.App. at 145, including previously submitted evidence of record of an in-service injury, this evidence relates indirectly to the question of service connection. The Court holds that the paramedic's March 1981 letter was new and material because it was of "sufficient weight or significance that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Sklar, supra; Cox, supra.*

■ Although the Court holds that the claim should have been reopened, it is unclear from the record whether the Board intended to reopen the claim. In December 1988, appellant sought to reopen his claim for service connection. R. at 196. However, the RO did not reopen the claim on the grounds that appellant had not presented new and material evidence. R. at 198. On January 4, 1991, the Board concluded sua sponte that the 1981 Board decision had not considered a part of appellant's period of active duty for training and remanded the low back strain decision for reconsideration. R. at 254. Upon completion of this development, the Board reviewed all of the evidence in rendering its August 1991 decision. Since the Board apparently reopened the claim, its failure to discuss per se the threshold issue of reopening is harmless error. *See* 38 U.S.C.A. § 7261(b) (West 1991).

### 2. *Review of the Claim on the Merits*

■ Having held that the Board should have and did reopen the low back disorder claim, the Court reviews the Board's decision under the clearly erroneous standard. *See Holoway v. Brown,* 4 Vet.App. 454, 456–57 (1993) (Board's denial of service connection for back disorder claim that was properly reopened had plausible basis in record); *Look v. Derwinski,* 2 Vet.App. 157, 161–62 (1992) (having determined that Board's reopening of claim was not improper, Court reviewed entire record under "clearly erroneous" standard); *Oppenheimer v. Derwinski,* 1 Vet.App. 370, 371 (1991) (having determined that Board's reopening of claim was not improper, Court reviewed claim based upon entire record); *see also Gilbert,* 1 Vet.App. at 53. The Board must base its decisions on "all evidence and material of record," 38 U.S.C.A. § 7104(a) (West 1991), and must provide a "written statement of [its] findings and

conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C.A. § 7104(d)(1) (West 1991). *See Douglas v. Derwinski,* 2 Vet. App. 435, 438–39 (1992) (en banc), vacating in part on other grounds, 2 Vet.App. 103 (1992); *Gilbert,* 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert,* 1 Vet.App. at 57.

In its decision, the Board pointed to the absence of any medically verified residuals over the years in support of its finding that any in-service low back injury had resolved and did not continue to affect appellant. *Stanton,* BVA 91–29548, at 5. The Board stated:

> The evidence of record shows clearly that any back injury sustained by the veteran while on active duty for training was not lasting. Rather, it resolved without chronic identifiable residuals as demonstrated by the absence of any *medical* [sic] *verified* residuals over the years. The record also indicates the presence of back injuries in addition to that reported in 1978. We note that although the paramedic has reported treatment for back complaints in 1981, there has been no *medical* verification of any chronic back impairment either before or since that report. The evidence fails to demonstrate chronic identifiable residuals attributable to the 1978 incident.

*Ibid.* (emphasis added). The Board also stated that "medical records from private physicians as well as VA medical records disclose treatment for a number of conditions but contain no reference to chronic back impairment." *Id.* at 4.

However, "[n]owhere do VA regulations provide that a veteran must establish service connection through medical records alone." *Cartright v. Derwinski,* 2 Vet. App. 24, 25 (1991); *see* 38 U.S.C.A. § 1154(a) (West 1991); 38 C.F.R. § 3.303(a) (1992); *see also* 38 C.F.R. § 3.303(b) (1992);

*Wilson v. Derwinski,* 2 Vet.App. 16, 19 (1991) ("The regulation requires continuity of symptomatology, not continuity of treatment."). Here, appellant reported during an October 1979 VA orthopedic examination that he had reinjured his lower back in January 1979 (possibly referring to the December 1978 injury) and that he was continuing to experience low back problems. R. at 81. The examining physician then gave a diagnosis of "[i]njury low back, history of, multiple episodes with residual low back strain chronic with limited motion and radiculopathy right." R. at 82; *see also* R. at 90. An April 3, 1982, VA medical certificate indicates that appellant was seen for complaints of back pain arising from pulling on his boots. R. at 91. September 27, 1982, VA progress notes also indicate that appellant complained of back pain since a 1979 injury (again possibly referring to the December 1978 in-service injury) and was noted as having a lower back problem. R. at 93–94. January 17, 1983, VA progress notes again indicate that appellant was having lower back pain. R. at 96. In addition, at a March 1990 personal hearing, appellant testified that preexisting low back pain became more severe after he was involved in an accident. R. at 237. (Appellant did not specify whether he was referring to the accident that damaged his right shoulder or the accident that reinjured his back.) Appellant's wife also testified at the personal hearing that appellant continued to suffer lower back problems after the two accidents (i.e., the right shoulder accident and the lower back injury). R. at 240. The Board was required to address appellant's and his wife's testimony and the evidence of lower back pain and problems as documented by the record.

The Court also notes that the May 1989 VA examination was inadequate. On the examination report, appellant noted that his lower back hurt occasionally, and he described the nature of that pain. R. at 130. However, the examination report does not disclose whether the VA examiner found or even checked for a low back condition. *See* R. at 132–33; *see also* R. at 139.

Under 38 C.F.R. § 4.2 (1992), "If a diagnosis is not supported by the findings on the examination report *or if the report does not contain sufficient detail,* it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." (Emphasis added.) *See Abernathy v. Principi,* 3 Vet.App. 461, 464 (1992); *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991). The Court holds that the 1989 VA examination was inadequate for purposes of determining whether appellant currently suffers any disability as a result of a low back injury and, if so, whether any such disability is the result of a low back injury incurred in or aggravated during service. *See Shoemaker v. Derwinski,* 3 Vet.App. 248, 254–55 (1992) (Board had duty to assist veteran under 38 U.S.C.A. § 5107(a) (West 1991) by ordering examination explaining relationship between veteran's various disorders); *see also Green, supra* ("[F]ulfillment of the statutory duty to assist here includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of the prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one."). Therefore, the Court will remand the case for compliance with the duty to assist by conducting a "thorough and contemporaneous medical examination."

### 3. *Clear and Unmistakable Error*

■ The Court also holds that the Board did not adjudicate the issue of clear and unmistakable error (CUE) in the 1981 BVA decision, which the Board raised sua sponte in its January 1991 remand. *See* 38 C.F.R. § 3.105(a) (1992); *Russell v. Principi,* 3 Vet.App. 310, 312–13 (1992) ("Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied."); *see also EF v. Derwinski,* 1 Vet.App. 324, 326 (1991); *cf. Mingo v. Derwinski,* 2 Vet. App. 51, 54 (1992); *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991). In January 1991, following the BVA remand, the RO prepared an SSOC. R. at 260–63. Under the heading *"PERTINENT LAWS, REGULATIONS, AND RATING SCHEDULE PRO-*

*VISIONS,"* the SSOC specified "38 C.F.R. § 3.105," the regulation authorizing reversal of a prior final decision on the basis of clear and unmistakable error. R. at 262. The SSOC also indicated that the effective date of service connection would be based on the original appeal if service connection were found to be warranted. *Ibid.* However, in the August 1991 decision, the Board avoided the CUE issue entirely by conducting a de novo review of the merits.

■ The Board is not free to disregard its own regulations and is "required to apply *all* relevant statutes and regulations appropriate to the particular case before it." *Browder v. Derwinski,* 1 Vet.App. 204, 205 (1991) (emphasis added); *Dofflemyer v. Derwinski,* 2 Vet.App. 277, 280 (1992); *Akles v. Derwinski,* 1 Vet.App. 118 (1991); *Payne v. Derwinski,* 1 Vet.App. 85 (1990); *Jolley v. Derwinski,* 1 Vet.App. 37 (1990); *see also Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). Here, the CUE issue could affect the effective date of award of service connection, and the Board should therefore have considered the regulation, which it cited, in dealing with CUE.

Significantly, the Board appears to have recognized the potential need for adjudication of the CUE issue when it remanded the claim in January 1991 for reconsideration in light of appellant's active duty for training. The pertinent regulation does not dictate that a CUE claim be raised by a particular party. 38 C.F.R. § 3.105(a). Having recognized in its January 1991 remand that the VA had not previously considered certain facts concerning appellant's period of service, the Board raised, and was required to follow through and adjudicate, the CUE issue. Thus, the CUE issue was "raised with specificity regarding when and how [CUE] occurred." *McIntosh v. Brown,* 4 Vet.App. 553, 561 (1993). Moreover, the CUE raised in this case involves "more than a disagreement as to how the facts were weighed or evaluated." *Rus-*

*sell,* 3 Vet.App. at 313; *McIntosh,* 4 Vet. App. at 561. Therefore, the Court will remand the matter to the Board for a determination by the Board on the CUE issue. *See Kinnaman v. Principi,* 4 Vet. App. 20, 26, 28 (1993).

### C. *Left Shoulder Condition Claim*

 Appellant's claim for service connection for left shoulder impingement syndrome as a result of his service-connected right shoulder condition is a new claim, and the Court reviews the Board's decision on this issue under the "clearly erroneous" standard. *Gilbert,* 1 Vet.App. at 53.

Here, on the May 1989 VA examination, a VA physician (Dr. William McBride), gave an impression of chronic rotator cuff tendinitis on the right with impingement syndrome on the left and the right. R. at 133. He then stated: "The patient has obvious gross atrophy of the shoulder, no doubt *due to* disuse associated with his chronic pain. It may thus be presumed that his left shoulder impingement syndrome and the degenerative changes noted on x-ray are at least *partly due to* this unequal load placed on it." *Ibid.* (emphasis added). On April 3, 1990, a VA physician, who had been asked to review appellant's examination results and report and to comment on whether the left shoulder problem relates to the right shoulder, wrote:

This veteran would probably have developed symptoms at the left shoulder even without the problem in the right shoulder. *However, the extra stress placed on the left shoulder by having to do more than usual has probably caused the symptoms to occur earlier at the left shoulder, and it has probably also caused the symptoms to be more bothersome than they would have been at the left shoulder.*

R. at 139 (emphasis added). As the Secretary points out in his brief, the Board rejected the two VA physicians' statements linking the left shoulder condition to the service-connected right shoulder condition with "its own unsubstantiated medical conclusions." *Colvin,* 1 Vet.App. at 175; *see Leopoldo v. Brown,* 4 Vet.App. 216, 219 (1993) (Board's medical conclusion that had

no evidentiary basis warranted remand); *Bailey v. Derwinski,* 1 Vet.App. 441, 447–48 (1991) (Board's reliance on unsubstantiated medical conclusions that were contrary to medical evidence of record warranted remand). *But see Leopoldo,* 4 Vet. App. at 219 (38 U.S.C.A. § 1110 (West 1991) does not provide disability compensation for *aggravation* of a non-service-connected condition by a service-connected condition). Therefore, the Court grants the Secretary's motion for remand and will remand this claim for further adjudication consistent with this decision.

### D. *Individual Unemployability*

 The Court further holds that the Board failed to adjudicate a claim for a total service-connected rating for purposes of individual unemployability (IU) pursuant to 38 C.F.R. § 4.16(b) (1992). In letters and in testimony prior to the BVA decision, appellant stated that he could no longer seek or maintain employment. R. at 220, 230, 243. Appellant thus presented a well-grounded claim for a total disability rating under section 4.16(b) ("It is the established policy of [VA] that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled"), and the Board, therefore, was required to deal with that claim. *See EF,* 1 Vet.App. at 326 (VA's duty to assist requires liberally reading all documents or oral testimony submitted prior to BVA decision to include issues raised therein); *Shoemaker,* 3 Vet.App. at 255–56 (Board's failure to consider IU required remand); *Mingo,* 2 Vet.App. at 53–54 (Board must provide reasons or bases for its finding that a claimant is not eligible for IU compensation). The Court, therefore, remands the IU claim to the Board for compliance with the statutory duty to assist in accordance with 38 U.S.C.A. § 5107(a) (West 1991) and 38 C.F.R. § 3.159 (1992), and for consideration under 38 C.F.R. § 4.16(b) and for extra-schedular consideration, if warranted, under 38 C.F.R. § 3.321(b)(2) (1992).

### E. *Non-service-connected Pension*

Since appellant served continuously for more than 90 days during a period of war, *see* 38 U.S.C.A. §§ 101(9), (11), 1521(j) (West 1991), the Board should also have adjudicated appellant's eligibility for a nonservice connected pension under 38 U.S.C.A. § 1521(a) (West 1991) and 38 C.F.R. §§ 4.17 (1992), 3.321(b)(2). *See* 38 C.F.R. § 3.151(a) (1992) ("claim ... for compensation may be considered to be a claim for pension"); *Pritchett v. Derwinski*, 2 Vet.App. 116, 122 (1992); *Ferraro v. Derwinski*, 1 Vet.App. 326, 333 (1991). On remand, the Board is directed to address this issue as well.

### III. CONCLUSION

Accordingly, upon consideration of the record, appellant's pleadings, and the Secretary's brief, the Court AFFIRMS in part and VACATES in part the August 1991 decision of the BVA, and REMANDS the matter for readjudication consistent with this opinion.