**Arthur L. WAKEFORD, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–403.**

United States Court of Veterans Appeals.

Oct. 4, 1995.

Michael P. Horan, was on the brief for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Michael A. Leonard, were on the brief for appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Judges.

NEBEKER, Chief Judge:

The appellant, Arthur L. Wakeford, appeals a January 4, 1993, Board of Veterans' Appeals (Board or BVA) decision which denied entitlement to service connection for impaired vision, defective hearing, a bilateral knee disorder, and a back disorder. After consideration of the record on appeal and the briefs of the parties, we vacate the Board's decision and remand the matters for the following reasons.

## I. Background

The appellant had active service in the U.S. Air Force from September 1980 to May 1986. Record (R.) at 19. His entrance examination was negative for any abnormalities or history of problems regarding his eyes, ears, knees, or back. R. at 28–29.

According to the appellant's entrance examination report, his distance vision was 20/20 bilaterally. R. at 29. In December 1980, the appellant was given emergency treatment when he got some asphalt remover in his eyes. R. at 35. It was determined that his vision was 20/20 bilaterally, and his corneas were clear. *Ibid.* He was treated with blephamide. *Ibid.* In January 1981, his medical records noted that the blephamide had caused swelling and, consequently, it was discontinued and the appellant was started on artificial tears. R. at 37. His visual acuity at that time was found to be 20/25 in the right eye and 20/30 in the left eye. *Ibid.* In December 1981, service medical records reveal that the appellant complained of a dry, gritty feeling in his eyes in the morning and reported that his eyes tired easily. R. at 76. His distance vision was 20/25 in the right eye, 20/30 in the left eye, and 20/20 bilaterally for near vision. R. at 76–77. Artificial tears were prescribed for the appellant's dry eyes. R. at 76. In August 1984, the appellant was prescribed eyeglasses to be worn part-time to correct his distance vision which was 20/25 in the right eye, and 20/30 in the left eye. R. at 105–06. He was prescribed some slightly stronger lenses in September 1985 during a routine eye examination. R. at 119–21.

According to his service medical records, in August 1981, the appellant complained that his knees had been hurting since the eighth grade. R. at 62–63. The impression at that time was chondromalacia. R. at 63, 73. (Chondromalacia is defined as the "abnormal softness of cartilage." WEBSTER'S MEDICAL DESK DICTIONARY 119 (1986).) The appellant was seen several more times for knee pain during service. *See, e.g.*, R. at 66, 75, 86, 108. In December 1985, a radiology examination revealed "Minimal degenerative change involv[ing] the patella bilaterally, raising the possibility of chondromalacia. Otherwise the exam[ination] is unremarkable." R. at 124. The appellant was fitted with knee braces. R. at 122.

In December 1985, the appellant fell while skiing. R. at 126. Back x-rays showed no significant abnormalities. R. at 128. The diagnosis was a mild cervical strain. R. at 130–31.

Service medical records are devoid of any evidence of treatment for a hearing problem. The appellant had four hearing examinations at various intervals during service, all of which indicated that his hearing was within the normal hearing range. R. at 102–03, 112, 138. The report of a July 1987 VA hearing examination reflects normal hearing. R. at 164.

The record reveals a series of procedural defects in the handling of the appellant's claims. At separation from service, the appellant filed an application for compensation or pension in which he claimed disabilities of his knees, back, and neck, and deteriorating hearing and sight. R. at 144. In April 1987, apparently because the claim made at separation had been lost, the appellant filed another claim for service connection for a bilateral knee disorder, impaired vision, a lower back and neck disorder, and exposure to phenol (an issue not on appeal here). R. at 149–52. At a VA examination in 1987, VA found his distance vision to be 20/50 bilaterally, corrected to 20/20 in each eye, and noted that he had photophobia, possibly secondary to conjunctivitis. R. at 157, 159. The examination was negative for any findings of problems in the cervical or lumbosacral spine or in either knee. R. at 160.

In a rating decision in November 1987, service connection for knee problems, back and neck problems, hearing loss, and phenol burns was denied. R. at 172. A decision on the appellant's vision problems was deferred pending a specialist's opinion. *Ibid.* The VA optometrist opined that "the reason for this patient's uncorrected vision of 20/50 is due to the myopia which appears to be developmental [and not in any way connected to service]." R. at 178. In December 1987, the VA regional office (RO) denied service connection for myopia and for conjunctivitis with secondary photophobia, finding that the appellant's conjunctivitis in service was acute and transitory. R. at 181.

In April 1990, the appellant sought to reopen his claims for "vision decifit [sic], light sensitivity, dry tear duck [sic][,] etc.," a bilateral knee condition, and a back and neck disability. R. at 191. The appellant also stated that he had problems with hearing loss due to noise. R. at 192. By letter in May 1990, the RO informed the appellant that the documents he submitted to reopen his claims were duplicative of documents already in the record and explained that to reopen his claims, "[the appellant] should submit medical evidence which tends to show that these conditions were incurred in or aggravated by ... military service...." R. at 195–96. In a letter dated August 1990, the RO informed the appellant that because he had not submitted any new evidence, his claims had been disallowed. R. at 202. The appellant filed a Notice of Disagreement (NOD) in August 1990 for the denial of service connection for an eye condition, hearing loss, and back condition. R. at 204. In September 1990, the RO, apparently confused as to what the appellant was submitting an NOD for and what the status of his claims was, and ignoring the fact that the appellant had attempted to reopen his claim in April 1990, informed the appellant that he could not reopen his claims for vision, back, and knee (rather than hearing) problems without new and material evidence, and that the appellant had had a year from the original denial to appeal. R. at 206.

In February 1991, the appellant submitted another request to reopen his claims, accom-

panied by private doctors' reports. The RO refused to reopen the appellant's claims concerning hearing loss, vision impairment, a bilateral knee condition, and back and neck problems. R. at 220. The new evidence was a private orthopedic report regarding his knees which stated, "DIFFERENTIAL DIAGNOSIS includes discoid lateral meniscus and a possible excessive lateral pressure on the patella" (R. at 211), and a private optometrist's opinion which noted that in light equal to sunlight the appellant's vision dropped to 20/50 in the right eye and 20/40 in the left eye (R. at 212). The RO found that this evidence regarding the knee and vision claims was new but not material, and no new evidence at all on the other claims had been submitted. R. at 220. The appellant was informed of this decision in a March 8, 1991, letter. R. at 222. A Statement of the Case (SOC) was issued in August 1991 which identified the issues as service connection for impaired vision, hearing loss, a bilateral knee condition, and a back condition. R. at 228. A hearing was held in September 1991. R. at 235. In a rating decision in December 1991, the RO again denied service connection. R. at 323. A Supplemental SOC was issued. R. at 325. In May 1992, the appellant submitted a statement specifically denying that he had experienced any knee problems before service. R. at 338.

The Board treated the claims as reopened without any discussion of whether new and material evidence had been submitted and denied entitlement to service connection for impaired vision, defective hearing, a bilateral knee disorder, and a back disorder.

## II. Analysis

The appellant argues that VA failed to comply with its regulations and denied him due process by not informing him of the nature of the evidence he needed to submit to develop his claim and by not keeping him apprised of the disposition of his claims throughout the claims process and the reasons therefor. The appellant also makes three arguments with regard to 38 U.S.C. § 1111 and 38 C.F.R. § 3.303(c) (1993). Section 1111 states:

> [E]very veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

(This statute, originally applicable only to wartime veterans, was made applicable to veterans who served in peacetime by 38 U.S.C. § 1137.) First, the appellant argues that the BVA erred in interpreting section 1111 when it found that, under its language, the presumption of soundness in the statute could be rebutted by "clear and unmistakable evidence" even where defects, disorders, or infirmities were not noted on the entrance examination. Second, he argues that VA's regulation at 38 C.F.R. § 3.303(c) is invalid under 38 U.S.C. § 1111, because it implements VA's erroneous interpretation of the statute. Finally, the appellant argues that the regulation violates the Administrative Procedure Act, 5 U.S.C. § 553 (1977) (APA), because it has never been subjected to notice and comment procedures.

The Secretary defends the BVA's interpretation of the statute and the validity of VA's regulation, but argues, in the main, that the appellant's claims, with the exception of his hearing claim, which the Secretary argues is not well grounded, should be remanded because the BVA's reasons and bases were inadequate. The Secretary points out that the Board was incorrect in stating that the RO had reopened the appellant's claim in February 1991 and denied it. Actually, the RO had refused to reopen. Because the BVA failed to "inform appellant in its decision that it had independently determined that his claims had been reopened," the Secretary argues the matter should be remanded for a determination of whether they were reopened. *See* Secretary's Brief (Br.) at 19.

The Secretary is correct that the BVA completely overlooked the issue of whether any new and material evidence had been submitted so that the appellant's claims could be reopened as required by 38 U.S.C. § 7104(b). Frankly, we are dismayed that a Board decision in 1993 could so completely

ignore this question. While this Court reviews such determinations de novo, *see Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992), we believe that the better course in this case is to remand, given that VA has failed to comply with its own regulations providing due process regarding the appellant's claims. *See, e.g.*, 38 C.F.R. § 3.103 (1994) (claimant is entitled to, inter alia, notice of any decision affecting benefits and the reasons therefor); 38 C.F.R. § 19.29 (1994) (regarding the requisite completeness of an SOC). Because the procedural posture of this case is so unclear, we decline to hold as we did in *Stanton v. Brown*, 5 Vet.App. 563 (1993), that the Board's error in not discussing the threshold issue of reopening was harmless. Thus, we do not reach the appellant's arguments regarding 38 U.S.C. § 1111 and 38 C.F.R. § 3.303(c).

We note the arguments of both parties that dispositions by VA of certain claims never became final, *see* Secretary's Br. at 20, Reply Br. at 4–5, and R. at 191; these arguments are relevant to determining the effective date of any grant of service connection. *See* 38 C.F.R. § 3.400 (1994). That matter is not ripe for disposition by this Court and must be addressed by the BVA in the event that any of the claims in question are granted.

### III. Conclusion

Accordingly, for the foregoing reasons, the Board's decision concerning the appellant's claims regarding his impaired vision, a back and neck disorder, a bilateral knee condition, and hearing loss is VACATED and the matters are REMANDED to the Board for an initial determination of whether any claim has been reopened and, if so, a readjudication of the claim on the merits. *See* 38 U.S.C. § 7252(a). On remand, the appellant will be free to submit additional evidence, and the BVA must address the reopening issue and consider the appellant's contentions regarding the relationship between the statute and the regulations.