Citation Nr: 1533649 
Decision Date: 08/06/15 Archive Date: 08/20/15

DOCKET NO. 98-10 796 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to an initial compensable rating prior to March 16, 2006 and in excess of 30 percent thereafter for an anxiety disorder with agoraphobia and panic attacks.

2. Entitlement to total disability rating for individual unemployability due to service-connected disability (TDIU). 


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

Donna D. Ebaugh, Counsel

INTRODUCTION

The Veteran active duty for training between March 1962 and September 1962.

This matter comes before the Board of Veterans Appeals (Board) on appeal from a March 1998 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan, which granted service connection for anxiety disorder with agoraphobia and panic attacks and assigned a noncompensable rating, effective July 6, 1988. Thereafter, the Veteran appealed with respect to the propriety of the initially assigned rating. 

In an August 2003 decision, the Board denied entitlement to a compensable rating for the Veteran's service-connected psychiatric disorder. Thereafter, he appealed the Board's denial to the United States Court of Appeals for Veterans Claims (Court). Pursuant to a September 2004 Joint Motion for Remand, the Court vacated the Board's decision and remanded the claim for additional consideration.

By decision dated in February 2005, the Board once again denied entitlement to a compensable rating for the Veteran's service-connected psychiatric disorder. The Veteran again appealed. In May 2007, the Court granted another Joint Motion for Remand, in which the Board's February 2005 decision was vacated and remanded for further development and readjudication.

The Board remanded the case to the agency of original jurisdiction (AOJ) in October 2007 for additional development. In an August 2008 rating decision, a 30 percent rating was assigned for the Veteran's anxiety disorder with agoraphobia and panic attacks effective March 16, 2006.

In a December 2008 decision, the Board denied entitlement to an initial compensable rating prior to March 15, 2006, and a rating in excess of 30 percent thereafter for the Veteran's service-connected psychiatric disorder. The Veteran again appealed the Board's decision to the Court. In a December 2009 Order, the Court granted yet another Joint Motion for Remand, and vacated and remanded the matter for further development and readjudication.

In November 2010, the Board once again remanded the case for further development. When the case was returned to the Board, the Veteran indicated that the disability had worsened and, as such, the Board again remanded the claim in December 2013 for additional development. The case now returns for further appellate review. 

Although an increased rating was granted during the pendency of the appeal, inasmuch as higher ratings for the disability are available, and the Veteran is presumed to seek the maximum available benefit for a disability, the claims for higher ratings remain viable on appeal. See AB v. Brown, 6 Vet. App. 35, 38 (1993). Furthermore, as the Veteran has been awarded a staged rating during the course of the appeal, the issue has been characterized as shown on the title page of the decision. See Fenderson v. West, 12 Vet. App. 119, 126-127 (1999).

The Board observes that, in correspondence dated in August 2008, the Veteran's former attorney raised the issue of entitlement to a TDIU based on his service-connected psychiatric disorder. As such, in an April 2013 rating decision, the agency of original jurisdiction (AOJ) adjudicated such issue and denied it. While the Veteran did not enter a notice of disagreement as to such denial, the AOJ included it in the June 2013 supplemental statement of the case. Furthermore, in Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for a TDIU is part of an increased rating claim when such claim is expressly raised by the Veteran or reasonably raised by the record. Therefore, the Board finds that the issue of entitlement to a TDIU is properly before the Board and has been included on the title page of this decision.
 
The Board notes that, in addition to the paper claims file, there are two separate paperless, electronic files associated with the Veteran's claim: a Virtual VA file and a Veterans Benefits Management System (VBMS) file. Both electronic files contain the May 2014 VA examination, which is not in the paper file. Additionally, the Virtual VA file contains VA outpatient treatment records not found in the paper file and the VBMS file contains the April 2015 supplemental statement of the case.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. For the entire appeal period, the Veteran's service-connected anxiety disorder with agoraphobia and panic attacks most nearly approximated definite social and industrial impairment and, as of November 7, 1996, occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, without more severe manifestations that more nearly approximate considerable or severe social and industrial impairment, or virtual isolation in the community, totally incapacitating psychoneurotic symptoms, or inability to obtain or retain employment, or, as of November 7, 1996, occupational and social impairment with reduced reliability and productivity or deficiencies in most areas, or total occupational and social impairment. 

2. The Veteran is not unable to secure or follow a substantially gainful occupation as a result of his sole service-connected disability of anxiety disorder with agoraphobia and panic attacks.


CONCLUSIONS OF LAW

1. For the entire appeal period, the criteria for an initial rating of 30 percent, but no higher, for an anxiety disorder with agoraphobia and panic attacks, have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.3, 4.7, 4.126, 4.130, 4.132, Diagnostic Codes 9400, 9412 (1996), (2014).

2. The criteria for a TDIU are not met at any time during the period covered by this appeal. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16, 4.19 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1). 

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the Court held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that a VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable agency of original jurisdiction AOJ decision on the claim for VA benefits. 

Neither the Veteran nor his representative has alleged prejudice with respect to notice, as is required. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009); Goodwin v. Peake, 22 Vet. App. 128 (2008); Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Moreover, none is found by the Board. Indeed, VA's duty to notify has been more than satisfied. In this case, the rating decision on appeal was issued prior to the enactment of the VCAA; however, during the pendency of the appeal, the Veteran was provided with the appropriate notice regarding the assignment of a higher rating for his psychiatric disorder in December 2011. Specifically, such letter advised the Veteran of the evidence and information necessary to substantiate his initial rating claim as well as his and VA's respective responsibilities in obtaining such evidence and information. Additionally, such letter advised him of the information and evidence necessary to establish a disability rating and an effective date in accordance with Dingess/Hartman, supra. Thereafter, his claim was readjudicated in the June 2013 and April 2015 supplemental statements of the case, thus curing any timing defect. 
Mayfield v. Nicholson, 444 F. 3d 1328, 1333-34 (Fed. Cir. 2006); Prickett v. Nicholson, 20 Vet. App. 370 (2006). 

Further, the Board observes that the Veteran's claim for a higher initial rating arises from his disagreement with the initial evaluation assigned following the grant of service connection. The Board notes that the Court held that "the statutory scheme contemplates that once a decision awarding service connection, a disability rating, and an effective date has been made, § 5103(a) notice has served its purpose, and its application is no longer required because the claim has already been substantiated." Dingess v. Nicholson, 19 Vet. App. 473, 490 (2006). In this case, the Veteran's service connection claim was granted and an initial rating was assigned in the March 1998 rating decision on appeal. As such, no additional 38 U.S.C.A. 
§ 5103(a) notice is required because the purpose that the notice is intended to serve has been fulfilled. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

With respect to the claim for a TDIU, the December 2011 letter, sent prior to the initial unfavorable decision issued in April 2013, advised the Veteran of the evidence and information necessary to substantiate such claim as well as his and VA's respective responsibilities in obtaining such evidence and information. Additionally, such letter advised him of the information and evidence necessary to establish an effective date in accordance with Dingess/Hartman, supra. 

Next, VA has a duty to assist a Veteran in the development of the claim. This duty includes assisting him in the procurement of service treatment records and other pertinent records, and providing an examination when necessary. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

In compliance with its duty to assist, the AOJ associated the Veteran's service treatment records, VA outpatient treatment records, and private treatment records, to include those from Dr. M.O., with the file. Neither the Veteran nor his representative has identified, and the record does not otherwise indicate, any additional evidence that is necessary for a fair adjudication of the claim that has not been requested or obtained. 

Additionally, the Veteran was afforded VA examinations in March 1996, May 2008, January 2011, and May 2014 with respect to his psychiatric disorder. Neither the Veteran nor his representative has alleged that such are inadequate for rating purposes. Moreover, the Board finds that the examination is adequate in order to evaluate the Veteran's service-connected anxiety disorder and TDIU claim as the examiners reviewed the claims file, conducted thorough interviews with the Veteran, obtaining a thorough history and current symptomatology, and conducted full mental status examinations. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (the probative value of a medical opinion comes from when it is the factually accurate, fully articulated, and sound reasoning for the conclusion). Furthermore, the examiners provided a complete description of the functional effect such disability has on the Veteran's employability. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013); Floore v. Shinseki, 26 Vet. App. 376, 381 (2013). Therefore, the Board finds that the examination report of record is adequate to adjudicate the Veteran's initial rating and TDIU claims and no further examination is necessary.

As noted in the Introduction, the Board remanded the case for additional development on several occasions in order to obtain VA treatment records and private records from Dr. M.O., and arrange for the Veteran to undergo VA examinations to assess the nature and severity of his service-connected psychiatric disorder. As discussed in the preceding paragraphs, the AOJ has substantially complied with all remand directives such that no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). 

Thus, the Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claims.

II. Initial Rating Claim

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. 
§ 4.7. All benefit of the doubt will be resolved in the Veteran's favor. 38 C.F.R. 
§ 4.3.

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where the appeal arises from the original assignment of a disability evaluation following an award of service connection, the severity of the disability at issue is to be considered during the entire period from the initial assignment of the disability rating to the present time. See Fenderson v. West, 12 Vet. App. 119 (1999). As in the instant case, separate ratings can be assigned for separate periods of time based on the facts found, a practice known as "staged" ratings. Id. at 126.

In this case, the Veteran was granted service connection for anxiety disorder in the March 1998 rating decision, effective July 6, 1988. He was initially assigned a noncompensable disability rating and appealed with respect to the propriety of the initially assigned rating, contending that his symptoms are of such severity as to warrant a higher initial rating. During the pendency of the appeal, the AOJ increased the Veteran's disability rating to 30 percent, effective March 16, 2006. The Veteran maintains that he is entitled to higher ratings for the all periods on appeal. 

The Veteran's service-connected acquired psychiatric disorder has been evaluated as noncompensably disabling effective July 6, 1988. During the course of his appeal, the regulations pertaining to psychiatric disabilities were revised. At the time the Veteran filed his service connection claim, a psychoneurotic disorder such as generalized anxiety disorder was evaluated under 38 C.F.R. § 4.132 as in effect prior to November 7, 1996. Diagnostic Code 9400 (generalized anxiety disorder) and other codes pertaining to psychoneurotic disorders provided for a 10 percent rating when symptomatology is less than the criteria required for the 30 percent evaluation, with emotional tension or other evidence of anxiety productive of mild social and industrial impairment. 

A 30 percent rating required definite impairment in the ability to establish or maintain effective and wholesome relationships with people, where the psychoneurotic symptoms result in such reduction in initiative, flexibility, efficiency, and reliability levels as to produce definite industrial impairment. 

In this regard, in the case of Hood v. Brown, 4 Vet. App. 301 (1993), the Court, then named the United States Court of Veterans Appeals, stated that the term "definite" in 38 C.F.R. § 4.132 (1993) was "qualitative" in character, whereas, the other terms were "quantitative" in character, and invited the Board to "construe" the term "definite" in a manner that would quantify the degree of impairment for purposes of meeting the statutory requirement that the Board articulate "reasons and bases" for its decision. See 38 U.S.C.A. § 7104(d)(1). In a precedent opinion, dated November 9, 1993, the General Counsel concluded that "definite" is to be construed as "distinct, unambiguous, and moderately large in degree." It represents a degree of social and industrial inadaptability that is "more than moderate but less than rather large." VAOPGCPREC No. 9-93, 59 Fed. Reg. 4753 (1994). In that opinion, the term "mild," the criterion for a 10 percent evaluation, was defined as "of moderate strength or intensity, and as applied to disease, not severe or dangerous." The word "definite," as used in 38 C.F.R. § 4.132 to describe a 30-percent degree of disability for purposes of rating claims based on certain mental disorders, should be construed to mean distinct, unambiguous, and moderately large in degree, more than moderate but less than rather large. VA, including the Board, is bound by this interpretation of these terms. 38 U.S.C.A. § 7104(c).

A 50 percent rating was assigned when the ability to maintain effective or favorable relationships with people is considerably impaired, and by reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels were so reduced as to result in considerable industrial impairment. 

A 70 percent evaluation required that the ability to maintain effectively or favorable relationships with people was severely impaired, with psychoneurotic symptoms of such severity and persistence that there was severe impairment in the ability to obtain or retain employment. 

A 100 percent evaluation under Diagnostic Code 9400 was warranted where the attitudes of all contacts except the most intimate were so adversely affected as to result in virtual isolation in the community; OR totally incapacitating psychoneurotic symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities such as fantasy, confusion, panic and explosions of aggressive energy resulting in profound retreat from reality; OR demonstrably unable to obtain or retain employment. The criteria for a 100 percent rating under the old version of Diagnostic Code 9400 were each independent bases for granting a 100 percent rating. Johnson v. Brown, 7 Vet. App. 95, 97 (1994).

On November 7, 1996, the rating criteria for psychiatric disorders were revised and are now found at 38 C.F.R. § 4.130. The revised rating criteria provides that generalized anxiety disorder (Diagnostic Code 9400), as well as other mental disorders, are to be assigned a 10 percent rating for occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication. 

A 30 percent rating is assigned when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 

A 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent rating is warranted for occupational and social impairment with deficiencies in most areas such as work, family relations, judgment, thinking, or mood, due to such items as: suicidal ideation; obsessional rituals which interfere with routine activity; speech intermittently illogical, obscure or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances and inability to establish and maintain effective relationships. 

A 100 percent disability evaluation requires total occupational and social impairment, due to symptoms such as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation or name.

As the United States Court of Appeals for the Federal Circuit recently explained, evaluation under 38 C.F.R. § 4.130 is "symptom-driven," meaning that "symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating" under that regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed.Cir.2013). The symptoms listed are not exhaustive, but rather "serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating." Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In the context of determining whether a higher disability evaluation is warranted, the analysis requires considering "not only the presence of certain symptoms[,] but also that those symptoms have caused occupational and social impairment in most of the referenced areas" - i.e., "the regulation ... requires an ultimate factual conclusion as to the Veteran's level of impairment in 'most areas.'" Vazquez-Claudio, 713 F.3d at 117-18; 38 C.F.R. § 4.130, Diagnostic Code 9411. 

Further, when evaluating a mental disorder, the Board must consider the "frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remission," and must also "assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination." 38 C.F.R. § 4.126(a). 

In addition to evidence regarding the Veteran's symptomatology and its impact on his social and occupational functioning, a Global Assessment of Functioning (GAF) score is another component considered to determine the entire disability picture for the Veteran. The GAF score is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness" from 0 to 100, with 100 representing superior functioning in a wide range of activities and no psychiatric symptoms. Carpenter v. Brown, 8 Vet. App. 240, 242 (1995) (quoting American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV) 32).

In this regard, a GAF score of 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with co-workers). A GAF score of 61-70 indicates mild symptoms or some difficulty in social, occupational, or school functioning. A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). 

As the Veteran's claim for a higher initial rating for his acquired psychiatric disorder was pending when the regulations pertaining to psychiatric disabilities were revised, he is entitled to the version of the law most favorable to him. Karnas v. Derwinski, 1 Vet. App. 308, 313 (1991) ("where [a] law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to [the] appellant should . . . apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so"). Prior to the effective date of the new regulations, however, the Veteran's claim for a higher initial rating may only be evaluated under the older criteria. 38 U.S.C.A. § 5110(g); VAOPGCPREC 3-2000 (April 10, 2000). 

Although VA may compensate a Veteran only for service-connected disability, the Board is precluded from differentiating between symptomatology attributed to a nonservice-connected disability and a service-connected disability in the absence of medical evidence which does so. Mittleider v. West, 11 Vet. App. 181 (1998). In this case, the Veteran has been diagnosed with an anxiety disorder as well as major depressive disorder and schizophrenia in remission. Notably, the January 2011 VA examiner noted that there was no documentation about any major symptoms of schizophrenia, even in the report of the Social Security examiner who assessed the same. In this case, the January 2011 VA examiner clarified that schizophrenia symptoms have not been demonstrated and that the Veteran's depression symptoms are related to his service-connected panic disorder because many individuals who have panic disorder develop circumscribed episodes of depression off and on because they get discouraged and feel hopeless about their anxiety symptoms not going away completely and not allowing them to function completely well. Therefore, where the symptoms associated with the Veteran's anxiety disorder are not differentiated from his other nonservice-connected disorders, the Board has attributed them to the service-connected disability.

As noted earlier, the March 1998 rating decision assigned an initial noncompensable rating for the Veteran's anxiety disorder, effective July 6, 1988. In August 2008, the Veteran's former attorney asserted that the Veteran's compensable evaluation of 30 percent should be effective as of July 6, 1988, rather than the assigned date of March 16, 2006. For the reasons discussed below, the Board agrees.

In this regard, an April 1988 private report from Dr. R.W. indicates that the Veteran's panic disorder had plagued him for years, had been the source of many of his job difficulties, and that a proposed transfer to another geographical location (for work) could bring back the full force of the Veteran's past symptoms. The Board acknowledges that the Veteran was not actually experiencing the full force of his past symptoms at that time and such was the basis of the Board's denial of the claim in the December 2008 decision. However, upon reevaluation of the evidence in light of the entire record on appeal, the Board accepts Dr. R.W.'s statement that the Veteran's disability was of such severity that it interfered with the Veteran's ability to complete assigned tasks at work. In this regard, the Veteran's supervisor desired to transfer the Veteran to another location to better suit the needs of the organization and due to the Veteran's service-connected psychiatric disorder, the Veteran was unable to complete the task. The Veteran went to great lengths to object to such transfer, including obtaining a letter from a psychologist in order to obtain an accommodation for the Veteran's psychiatric disability. 

The Board also notes that the Veteran asserts that he took 100 hours of sick leave while the matter of the job transfer was being sorted out. See July 1991 Summary of Findings of The Michigan Department of Civil Rights. Ostensibly, such leave was taken to avoid actually transferring to the alternative location. Treatment records do not indicate that the sick leave was ordered by a medical (or psychiatric) professional. However, the Board finds that the Veteran choosing to use 100 hours of sick leave lends in order to avoid a stressful circumstance lends credibility to his assertion that he had a "definite" impairment at that time. Even though the sick leave was later credited back to the Veteran, at the time that he took the leave, he was sacrificing time and money as a result of his anxiety disorder and he did not know that he would be paid back. 

Additionally, the March 1996 VA psychiatric examination report notes the Veteran reported that his psychiatric impairment consisted principally of agoraphobia with panic attacks, which manifested when he had to drive in to the city for the March 1996 VA examination. He reported using Xanax over the prior 10 years. Furthermore, during a December 1997 private evaluation, the Veteran was found to have a flattened affect. At such time, it was also noted that his interpersonal manners were quite constricted as he did not volunteer information and he showed a reluctance to do so when asked. Insight was judged to be questionable, with vagueness noted in the minimal amount of speech. The Veteran also reported that he had persecutory feelings about his bosses at work until he retired in 1995. 

In February 1999, the Veteran underwent another private evaluation. At such time, he reported a history of agoraphobia, anxiety and panic attacks since service. Mental status examination revealed that the Veteran maintained a suspicious facial expression, and was guarded and withdrawn. The examiner was not clear whether the appellant had good contact with reality, although for the most part it appeared that he did. Insight was judged to be limited. 

The claims folder also contains subjective assessments of the service-connected disorder by the Veteran and his wife in forms completed in 1997 and 1998. Therein they both note that the Veteran became anxious in stressful situations or when in crowds. The Veteran indicated that he occasionally had difficulty sleeping when anxious. The Board notes that, as documented by Dr. M.O. in treatment records dated from June 2006 to December 2007, the Veteran has also complained of an intolerance for situations involving crowds, crossing bridges, and riding in elevators, as well as fears involving eating in restaurants and home break-ins. 

Based on the foregoing, the Board finds that, for the appeal period prior to March 16, 2006, the VA examination reports, private treatment records, VA treatment records, as well as the Veteran's own statements, indicate symptoms that are predominantly in the 30 percent criteria, as defined under either the old or new criteria (as applicable), including depressed mood, anxiety, suspiciousness, occasional panic attacks in certain situations, and some difficulty sleeping, and most nearly approximates definite social and industrial impairment and, as of November 7, 1996, occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. Therefore, the Board finds that an initial 30 percent rating is warranted for the Veteran's anxiety disorder for the entire appeal period, to include the period prior to March 16, 2006. 

However, the Board finds that an initial rating in excess of 30 percent for any time period on appeal is not warranted. Specifically, the Board finds that the Veteran's anxiety disorder does not result in more severe manifestations that more nearly approximate considerable or severe social and industrial impairment, or virtual isolation in the community, totally incapacitating psychoneurotic symptoms, or inability to obtain or retain employment, or, as of November 7, 1996, occupational and social impairment with reduced reliability and productivity or deficiencies in most areas, or total occupational and social impairment.

As indicated previously, under the old criteria, a 50 percent rating was assigned when the ability to maintain effective or favorable relationships with people is considerably impaired, and by reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels were so reduced as to result in considerable industrial impairment. Similarly, under the new criteria, a 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. However, the Board finds that the Veteran's anxiety disorder does not result in considerable social and industrial impairment or, beginning November 7, 1996, occupational and social impairment with reduced reliability and productivity.

The Board acknowledges that the Veteran was found to have a flattened affect during a December 1997 private evaluation but such was not noted again subsequently. To the contrary, the May 2008 VA examiner noted that the Veteran's affect was appropriate. Similarly, the March 1996 and May 2014 VA examiner noted that his behavior was appropriate. Specifically, the former examiner noted that the Veteran seemed very well controlled and mature, though with a sense of humor. VA and private treatment records did not indicate a flattened affect. Thus, the Board has determined that the Veteran did not have a flattened affect of the frequency, severity, or duration to result in considerable social and industrial impairment or occupational and social impairment with reduced reliability and productivity. 

Furthermore, the Veteran's speech has never been characterized as circumstantial, circumlocutory, or stereotyped. In December 1997, it was noted that there was no evidence of blocked, illogical, pressured, slowed, or circumstantial speech. In February 1999, the Veteran's answers to questions were brief, but focused and topic-directed. The May 2008 and January 2011 VA examiners indicated that the Veteran's speech was spontaneous. Furthermore, the May 2014 VA examiner noted that his speech was logical and relevant. Private treatment records do not indicate any problems with the Veteran's speech.

Regarding panic attacks, the Veteran has reported experiencing panic attacks and, in fact, such are specifically included in the characterization of his service-connected disability, but has indicated that he is able to manage the frequency of the attacks by avoiding circumstances that typically bring on panic attacks. See e.g. Veteran's statements regarding avoiding circumstances such as church and movies if he is unable to sit in the back, on the aisle, as well as statements regarding avoiding driving over bridges. Additionally, in December 1997, such panic attacks were described as 'occasional.' Panic attacks occurring weekly or less often are contemplated by the currently-assigned 30 percent disability rating. The Board also acknowledges that he reported to his physician in January 2011 that he has anxiety attacks at least two or three times a week and that he gets panicked if he has to be on the elevators or in closed places and he also reports being uncomfortable when he is driving alone. He reported that when he gets anxiety, he gets dizzy spells and sweaty and he has heart pounding and feels uncomfortable. He reported that he gets short-winded and it lasts for about 15 minutes and he has to take extra Klonopin to help it. See January 2011 compensation and pension examination. Notably, he did not report the same frequency of anxiety attacks during the May 2014 VA examination. However, the examiner also concluded the report by noting that the degree of any social and industrial impairment resulting from his panic disorder with agoraphobia alone is mild to moderate and it depends on whether he is depressed or not. Consequently, while the Veteran does experience panic attacks, the Board finds that the frequency, severity, and duration of such to be contemplated in his current 30 percent rating and do not result in considerable social and industrial impairment or occupational and social impairment with reduced reliability and productivity. 

Additionally, the Veteran has never been noted to have difficulty in understanding complex commands, nor does he contend that he has such difficulty. None of his private or VA treatment providers noted any problems with the Veteran's ability to understand complex commands. 

Similarly, there has been no impairment of short or long term memory shown. In this regard, the evidence of record does not note any deficiencies with the Veteran's memory. Specifically, in March 1996, the Veteran was able to perform basic memory tests and, in December 1997, memory testing revealed no abnormality. Similarly, in February 1999, there was no gross impairment of memory and, in May 2008, he reported no problems with his memory. Likewise, in January 2011, it was noted that his memory was reasonable. To the extent that the Veteran contends he has any memory loss, the Board emphasizes that "mild memory loss" is contemplated by the 30 percent disability rating. The evidence does not indicate that there is any memory loss that is of such frequency, severity, or duration to warrant a 50 percent disability rating under either the old or new criteria. 

The Veteran has also not been found to have impaired judgment. The Board acknowledges that he may have had impaired judgment with respect to his drinking in the 1970's, however, the Veteran has consistently reported that he has been sober throughout the appeal period. See May 2008 VA examination report noting the Veteran's report of a fight when drinking, consistent with other reports from the Veteran regarding the same fight that occurred in the late 1970's. Similarly, at the March 1996 VA examination, the Veteran reported that he had not used any alcohol since 1985, and reported having no history of self-harm or violent tendencies. The May 2008 VA examiner noted that the Veteran did not have any current, impulsive behavior, and judgment was noted to be fair. The Board also notes the Veteran's report during the May 2014 VA examination in which he reported that he was in a fist fight with his boss once but that the boss charged at him, not that the Veteran charged at the boss. Thus, impulsive behavior has not been shown to have occurred with such frequency, severity or duration to warrant a 50 percent disability rating under either the old or new criteria.

Impaired abstract thinking has not been shown. In this regard, neither the VA examiners nor the VA or private treatment provider have noted a thought disorder. To the contrary the January 2011 VA physician noted that the Veteran's thought process was grossly logical, relevant, and goal-oriented. 

With respect to "disturbances of motivation and mood," the March 1996 VA examiner observed that the Veteran seemed very well controlled and mature, though with a sense of humor. However, in December 1997 and February 1999, it was noted that the Veteran had anxiety, agoraphobia, and occasional panic attacks. Additionally, in May 2008, the Veteran reported that, due to such symptoms, he was not socially active and primarily stayed at home; however, he indicated that he enjoyed playing golf, fishing, doing housework, and gardening. 

Similarly, the January 2011 VA examiner noted mild symptoms of depression, anxiety, and agoraphobia, despite the Veteran's report that he felt hopeless and helpless, being tired, and not having much energy. The January 2011 physician noted that the Veteran had current diagnoses of panic disorder with agoraphobia and major depression and that the Veteran's symptoms of depression are more related to his panic disorder with agoraphobia (for which he is service-connected). The examiner explained that many individuals who have panic disorder develop circumscribed episodes of depression off and on because they get discouraged and feel hopeless about their anxiety symptoms not going away completely and not allowing them to function completely well. The Board notes that "depressed mood" is a criterion for the 30 percent rating. Moreover, the January 2011 VA physician noted that the degree of any social and industrial impairment resulting from the Veteran's panic disorder with agoraphobia alone is mild to moderate and it depends on whether he is depressed or not. VA treatment records noted the Veteran's reports of feeling down, depressed, or hopeless but also noted that he reported that he had not had any feelings of "little interest or pleasure in doing things." See November 2009 VA depression screen. For these reasons, the Board finds that the Veteran's disturbances of motivation and mood are not of the severity, frequency, or duration to warrant a 50 percent disability rating under either the old or new criteria.

Further, the Board acknowledges that the Veteran has consistently reported anxiety; however, the Board finds that the Veteran's complaints are contemplated by the 30 percent rating criteria. In this regard, the examiners have consistently noted that the Veteran is guarded. See e.g. private and VA examination reports dated since February 1999. During the December 1997 private examination, he also reported that he had persecutory feelings about his bosses at work until he retired in 1995. The Board finds the guardedness and persecutory feelings to be consistent with the "suspiciousness" rating criterion under the 30 percent disability rating criteria. As his anxiety has not been described as more severe, the Board finds that his mood is not of the severity to warrant a 50 percent disability rating under either the old or new criteria.

Regarding difficulty establishing and maintaining effective work and social relationships, the Board finds that the Veteran does not meet this criterion. Specifically, prior to his retirement in 1995, he worked full-time for 31 years for the same employer. Further, he has remained married to the same spouse for nearly 50 years. He has also reported a good relationship with other family members, including his children and grandchildren He has also reported that, prior to his retirement, on multiple occasions, he went with his work crew for coffee, i.e. socialized with coworkers. See April 1988 letter from Dr. R.W. The Board acknowledges that when asked about his friends, he reported that he has acquaintances. However, as the evidence demonstrates that has close relationships, the Board finds that any difficulty he has dealing with others, is contemplated by the 30 percent disability rating and is not of the frequency, severity, or duration to warrant a 50 percent disability rating under either the old or new criteria.

The Board further notes that the evidence of record reflects that the Veteran has additional symptomatology that is not enumerated in the rating criteria, to include some sleep disturbance on occasion and appetite problems, and an inability to travel. See Mauerhan, supra; Vazquez-Claudio, supra. However, the Board finds that the Veteran's psychiatric symptoms, taken as a whole, do not considerably impair his ability to maintain effective or favorable relationships with people, and by reason of psychoneurotic symptoms the reliability, flexibility, and efficiency levels are not so reduced as to result in considerable industrial impairment. Similarly, under the new criteria, such symptomatology does not result in occupational and social impairment with reduced reliability and productivity. Therefore, for the entire appeal period, the criteria for a 50 percent rating under either the old or new regulations is not warranted. 

In reaching such determination, the Board has also considered the Veteran's GAF scores assigned during the course of the appeal. As discussed above, according to the DSM-IV, a GAF scale includes scores ranging between zero and 100 which represent the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health illness. The GAF score and the interpretations of the score are important considerations in rating a psychiatric disability. See, e.g., Richard v. Brown, 9 Vet. App. 266, 267 (1996); Carpenter v. Brown, 8 Vet. App. 240 (1995). However, an assigned GAF score, like an examiner's assessment of the severity of a condition, is not dispositive of the percentage rating issue; rather, it must be considered in light of the actual symptoms of a psychiatric disorder (which provide the primary basis for the rating assigned). See 38 C.F.R. § 4.126(a). As noted above, GAF scores ranging between 61 and 80 are indicative of mild or transient symptoms. 

In this case, the Veteran has been assigned GAF scores ranging from 60-80, with the predominant score being 65. In this regard, in a March 1996 private examination, he was assessed a GAF score of 80, but subsequently, had GAF scores of 65, 65-75, and 60. See May 2008 VA examination report, January 2011 VA compensation and pension examination report, and the May 2014 VA examination report. The majority of the Veteran's GAF scores are indicative of mild symptoms and do not support a rating in excess of 30 percent. The Board acknowledges that the January 2011 GAF score of 60 supports a finding of moderate symptoms. However, as discussed above, the frequency, severity, or duration of the Veteran's symptoms most nearly approximate a 30 percent disability rating. Consequently, as his psychiatric disability symptoms are contemplated by his currently-assigned 30 percent rating and, absent more severe symptoms, a higher rating is not warranted.

As the Board finds that the next-higher 50 percent rating is not warranted, it logically follows that the criteria for the 70 percent and 100 percent disability ratings are also not met. 

Specifically, with regard to a 70 percent rating, the Board finds that the Veteran's anxiety disorder does not result in severe social and industrial impairment or occupational and social impairment with deficiencies in most areas.

In this regard, the Board notes that the VA examination reports, treatment records, and Veteran's statements do not indicate that the Veteran has suicidal ideation during the appeal period or obsessional rituals at all, much less rituals which interfere with routine activities. Regarding the Veteran's speech, his speech has never been described as illogical, obscure, or irrelevant. Although the Veteran reports that specific circumstances lead to panic attacks for him, there is no evidence of near-continuous panic or depression affecting his ability to function independently, appropriately, and effectively. The Board acknowledges that the Veteran has reported occasional panic attacks and those are reflected in the 30 percent rating criteria. 

Additionally, there is no evidence that the Veteran suffers from impaired impulse control. In this regard, objective examination did not reveal impaired impulse control and the Veteran has not reported any problems controlling his temper. As discussed above, he has reported two fights, which were isolated incidents and did not occur during the period in question. Furthermore, the Veteran has never been noted to have spatial disorientation. In this regard, VA examination reports and private treatment records dated during the course of the appeal reflect that the Veteran was consistently alert and oriented. 

The Board further finds that the evidence fails to demonstrate that the Veteran neglects his personal appearance and hygiene. In this regard, the May 2008, January 2011, and May 2014 VA examination reports consistently noted that he was appropriately groomed. 

Pertaining to whether the Veteran has difficulty in adapting to stressful circumstances, the Board acknowledges that when the Veteran was working, many years prior to the period in question here, he was arguably in a protected work environment and that the reasons for such protected environment have not changed despite the Veteran's retirement. In other words, the example of his work experience is relevant for the period in question to demonstrate his difficulty with stressful circumstances, even though his work experience occurred during another period on appeal. With respect to the protected work environment, he was allowed to remain with the office with which he was familiar, rather than having to transfer to a different office in order to prevent high anxiety and onset of more severe symptoms. The Board acknowledges the Veteran's contention that due to his psychiatric disability, and the need for such accommodation, he also missed out on opportunities for promotion. While the Board finds it reasonable that there may have been a cost associated with the Veteran's accommodation, the Veteran has not submitted any examples of those specific costs such as opportunities that he applied for and did not get, or any examples of being treated differently by his supervisor and coworkers. The Board cannot base its decision on speculation. Giving the Veteran the benefit of the doubt, the Board finds that the Veteran's difficulty adapting to stressful circumstances during the period from March 16, 2006, is contemplated by the 30 percent rating criteria for anxiety and suspiciousness. Moreover, the Veteran has proven that he is quite capable of managing stressful circumstances as he reports that when he goes to church and/or movies, he looks for an aisle seat in the back of the room and that if such is not available, he does not subject himself to the situation. 

As discussed above, the Veteran has been married for nearly 50 years and reports good relationships with his family members, even if he reports that he only has acquaintances outside of his family. Thus, the evidence does not demonstrate an inability to establish and maintain effective relationships.

Moreover, the Board finds that the criteria for a 100 percent rating under either the old or new criteria are not met. In this regard, the evidence does not show that the Veteran is virtually isolated in the community, has totally incapacitating psychoneurotic symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities such as fantasy, confusion, panic, and explosions of aggressive energy resulting in profound retreat from mature behavior, or the inability to obtain or retain employment. Furthermore, his anxiety disorder does not result in total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 

In this regard, there is no evidence of hallucinations, delusions, or significant cognitive impairment found on mental status examination. The May 2008, January 2011, and May 2014 VA examiners found no evidence of a thought disorder, hallucinations, or delusions. There was no evidence of gross impairment in thought processes or communication, grossly inappropriate behavior, persistent danger to himself or others, an inability to perform activities of daily living, disorientation to time or place, or memory loss for names of close relatives, occupation, or own name, at either examination. The remaining treatment records and statements do not indicate otherwise. Therefore, the Veteran is not entitled to a 100 percent rating under either the old or new criteria.

In reaching the foregoing decisions, the Board acknowledges the Veteran's statements and belief that he is entitled to a higher rating, and indeed the Board has herein granted an increase in part based on such statements. But, the Board finds that an initial rating in excess of 30 percent is not warranted under the applicable rating criteria at any time on appeal. See Fenderson, supra.

Additionally, the Board has contemplated whether the case should be referred for extra-schedular consideration. An extra-schedular disability rating is warranted if the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that application of the regular schedular standards would be impracticable. 38 C.F.R. § 3.321(b)(1).

In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the Court explained how the provisions of 38 C.F.R. § 3.321 are applied. Specifically, the Court stated that the determination of whether a claimant is entitled to an extra-schedular rating under 
§ 3.321 is a three-step inquiry. First, it must be determined whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. In this regard, the Court indicated that there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required.

Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization." Third, when an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extra-schedular rating. Id.

The Board has carefully compared the level of severity and symptomatology of the Veteran's service-connected psychiatric disability with the established criteria found in the rating schedule. The Board finds that the Veteran's psychiatric symptomatology is fully addressed by the rating criteria under which such disability is rated. In this regard, all of the Veteran's psychiatric symptomatology is contemplated by the rating criteria, to include those symptoms which are not specifically enumerated. See Mauerhan, supra; Vazquez-Claudio, supra. There are no additional symptoms of his psychiatric disability that are not addressed by the rating schedule. Therefore, the Board finds that the rating criteria reasonably describe the Veteran's disability level and symptomatology of his service-connected disability. As such, the Board finds that the rating schedule is adequate to evaluate the Veteran's disability picture. Therefore, the Board need not proceed to consider the second factor, viz., whether there are attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization. Nevertheless, the Board observes that no psychiatric hospitalization has been noted during the appeal period. Further, the Board notes that the Veteran remained employed for 31 years by the same employer, prior to his retirement. The Board acknowledges some interference with his ability to be tasked to new location due to his anxiety and his representative's contention that the Veteran was in a protected work environment; however, the Board finds that the rating criteria contemplate such interference with work. Consequently, the Board concludes that referral of this case for consideration of an extra-schedular rating is not warranted. Id.; Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996).

The Board has considered the applicability of the benefit of the doubt doctrine and applied the same where necessary. However, the preponderance of the evidence is against the claim of entitlement to an initial rating in excess of 30 at any time during the appeal period. As such, the claims for increase must be denied. 38 U.S.C.A. 
§ 5107; 38 C.F.R. § 3.102.

III. TDIU Claim

In this case, the Veteran asserts that he is unable to work due to his service-connected psychiatric disability. The Veteran's claim for TDIU arose as part and parcel of the claim for an increased rating for his anxiety disorder. See Rice v. Shinseki, 22 Vet. App. 447 (2009); Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). In this regard, an August 2008 statement from the Veteran's former representative indicated that his anxiety disorder prevented him from working. 

It is the established policy of VA that all Veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16. A finding of total disability is appropriate "when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." See 38 C.F.R. §§ 3.340(a)(1), 4.15. A TDIU rating may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 U.S.C.A. § 1155; 38 C.F.R. 
§§ 3.340, 3.341, 4.16(a). Rating boards should refer to the Director of the Compensation and Pension Service for extra-schedular consideration all cases of Veterans who are unemployable by reason of service connected disabilities but who fail to meet the percentage requirements set forth in 38 C.F.R. § 4.16(a). 38 C.F.R. § 4.16(b).

The Veteran has a sole service-connected disability of anxiety disorder with agoraphobia and panic attacks, which has been rated as 30 percent disabling for the entire appeal period. 

As an initial matter, the Board finds that the Veteran does not meet the schedular criteria for a TDIU under 38 C.F.R. § 4.16(a). Consequently, the only remaining question in this case is whether the Veteran is unable to secure or follow a substantially gainful occupation as a result of his service-connected disability, for purposes of a possible extra-schedular evaluation. 38 C.F.R. § 4.16(b). 

However, the Board itself cannot assign an extra-schedular rating in the first instance. See Bagwell v. Brown, 9 Vet. App. 337, 338-9 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996). Although Bagwell and Floyd only dealt with ratings under § 3.321(b)(1), the analysis in those cases is analogous to TDIU ratings under 
§ 4.16(b) as well, in view of that section's similar requirement of referral to the Director of VA's Compensation and Pension Service, in addition to Court precedents requiring consideration of § 4.16(b) when the issue is raised in an increased-rating case. See Stanton v. Brown, 5 Vet. App. 563, 570 (1993); Fanning v. Brown, 4 Vet. App. 225, 229 (1993). 

That is, since the Board itself cannot assign an extra-schedular rating in the first instance, it must specifically adjudicate whether to refer a case to the Director of Compensation and Pension Services for an extra-schedular evaluation when the issue is either raised by the claimant or is reasonably raised by the evidence of record. See Thun v. Peake, 22 Vet. App. 111, 115 (2008); Barringer v. Peake, 22 Vet. App. 242 (2008). If, and only if, the Director determines that an extra-schedular evaluation is not warranted, does the Board then have jurisdiction to decide the extra-schedular claim on the merits. In fact, the Court held that although the Board is precluded from initially assigning an extraschedular rating, there is no restriction on the Board's ability to review the adjudication of an extraschedular rating once the Director of C&P determines that an extraschedular rating is not warranted. Anderson v. Shinseki, 22 Vet. App. 423, 427-8 (2009). See also Floyd, 9 Vet. App. at 96-97 (stating that once Board properly refers an extraschedular rating issue to Director of C & P for review, appellant may "continue[ ] to appeal the extraschedular rating aspect of this claim"); see also 38 U.S.C.A. §§ 511(a) , 7104(a) ("All questions in a matter ... subject to decision by the Secretary shall be subject to one review on appeal to the ... Board."). 

Where, as in this case, a Veteran fails to meet the applicable percentage standards, an extra-schedular rating is for consideration where the Veteran is found unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b). Individual unemployability must be determined with consideration of a Veteran/s education and occupational experience but without regard to any non-service connected disabilities or a Veteran's advancing age. 38 C.F.R. §§ 3.341(a), 4.19; see also Van Hoose v. Brown, 4 Vet. App. 361 (1993). When reasonable doubt arises as to the degree of disability, such doubt will be resolved in a Veteran's favor. 38 C.F.R. § 4.3.

While the regulations do not provide a definition of "substantially gainful employment," VA Adjudication Procedure Manual, M21-1 MR, Part IV, Subpart ii, Chapter 2 (Dec. 13, 2005) (previously cited at M21-1, Part IV, paragraph 7.09), defines the term as that "at which non-disabled individuals earn their livelihood with earnings comparable to the particular occupation in the community where the Veteran resides."

Also, in Faust v. West, 13 Vet. App. 342 (2000), the Court defined "substantially gainful employment" as an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that a Veteran actually works and without regard to a Veteran's earned annual income. In Hatlestad v. Derwinski, 5 Vet. App. 524, 529 (1993), the Court held that the central inquiry in determining whether a Veteran is entitled to TDIU is whether his service-connected disabilities alone are of sufficient severity to produce unemployability.

The determination as to whether a total disability is appropriate should not be based solely upon demonstrated difficulty in obtaining employment in one particular field, which could also potentially be due to external bases such as economic factors, but rather to all reasonably available sources of employment under the circumstances. See Ferraro v. Derwinski, 1 Vet. App. 326, 331-332 (1991).
 
In the June 2013 supplemental statement of the case, the AOJ considered whether referral to the Director of Compensation and Pension Services was warranted but determined that it was not. For the reasons below, the Board agrees. 

Here, the Veteran has reported in written statements that he believes his service-connected psychiatric disability renders him unemployable. He reiterated this belief, through his representative, in the August 2008 letter. Upon review of the evidence, however, the Board finds that the Veteran is not prevented from securing or following substantially gainful employment due to his service-connected acquired psychiatric disability. In this regard, the Board finds that, while the Veteran may well have required an accommodation for his service-connected disability, as described above, he was still able to work full-time. 

The Veteran's psychiatric symptoms were consistently productive of definite social and industrial impairment or occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (i.e., when he took 100 hours of sick leave to avoid transferring to another work location due to anxiety about the transfer) but does not more nearly approximate considerable or severe social and industrial impairment, or virtual isolation in the community, totally incapacitating psychoneurotic symptoms, or inability to obtain or retain employment, or, as of November 7, 1996, occupational and social impairment with reduced reliability and productivity or deficiencies in most areas, or total occupational and social impairment. See VA examinations reports dated in May 2008, January 2011, and May 2014. Moreover, the January 2011 VA examiner specifically opined that the Veteran's panic disorder with agoraphobia alone does not render him unemployable

Further, the Board notes that the Veteran has not worked since 1995, but observes that he has consistently reported that he retired after working for the same employer for 31 years. The Board also notes that the Veteran was only 55 years old when he retired, and that he reported to the January 2011 VA examiner that he retired when the job became too much for him. However, the Board emphasizes that, even upon consideration of the Veteran's statement, the examiner specifically stated that the Veteran's service-connected panic disorder with agoraphobia is mild to moderate and that disability, alone, does not render him unemployable. The Board acknowledges the January 2011 VA examiner's subsequent statement that any employment where he feels stressed out will make him have more panic attacks, make his depression worse and that such would affect his non-service-connected heart and hypertension disorders. Nevertheless, for the purposes of determining whether service-connected disorder renders the Veteran unable to sustain substantially gainful employment, the Board finds that it does not. 

Therefore, the Board concludes that referral for an extraschedular TDIU is not warranted because the functional limitations imposed by the service-connected anxiety disorder do not preclude securing or following all forms of substantially gainful employment. 

In reaching such determination, the Board has considered the Veteran's statements that he believes his service-connected anxiety disorder renders him unemployable. While the Veteran is competent to report symptoms that come to him through his senses (such as an inability to perform a particular task due to persecutory feelings or suspiciousness.). See Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, the Board places greater probative weight on the clinical observations and functional assessments of the VA outpatient care providers and the VA examiners because they are consistent over the period of the appeal and are based on an accurate review of the file and personal observations of the Veteran. Moreover, the January 2011 VA examiner specifically found that the service connected disability does not render the Veteran unemployable. Further, the private evaluations of record do not support a finding of unemployability due to the anxiety disorder. 

Based on the foregoing, the preponderance of the evidence shows that the Veteran's psychiatric disorder imposes, at most, occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. For these reasons, a schedular TDIU is denied and the claim is not referred for extraschedular consideration. In reaching this conclusion, the Board finds that the preponderance of the evidence is against this claim. As such, the "benefit of the doubt" rule is not for application, and the claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 4.3. 
 

ORDER

For the entire appeal period, an initial rating of 30 percent, but no higher, for anxiety disorder with agoraphobia and panic attacks is granted, subject to the laws and regulations governing payment of monetary benefits.

A TDIU is denied.


____________________________________________
A. JAEGER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs